UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

LUIS LUGO, et al,
Plaintiffs,

v.                                                                Civ. No. 98-1011 (HL)

MIGUEL CORDERO, et al,
Defendants.

**OPINION AND ORDER**

Before the Court is defendants' motion for summary judgment. Defendants are Miguel Cordero ("Cordero"), the Executive Director of the Puerto Rico Electric Power Authority (PREPA); Ramon Ocasio-Navarro ("Ocasio"), Internal Auditing Administrator; Candelaria Cuello-Suarez ("Cuello"), former Internal Auditing Administrator; Nydia Verge ("Verge"), Director of the Human Resources Department; Magaly Alverio ("Alverio"), Head of the Personnel Division; Elsie Llompart ("Llompart"), former Head of the Personnel Division; and Felisa Recio Mandes ("Recio"), Head of PREPA's Equal Employment Opportunity Office.[1] Plaintiffs are Luis Lugo, his wis wife Carmen Rosa Vega Concepcion, and their conjugal partnership. Lugo is an employee of PREPA. He claims that he has suffered discrimination because of his political affiliation. He seeks monetary and injunctive relief pursuant to 42 U.S.C. § 1983. Lugo also invokes the Court's supplemental jurisdiction for his Puerto Rico law claims. 28 U.S.C. § 1367.

The Court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995). Lugo has been an employee of the Puerto Rico Electric Power Authority (PREPA) since 1974. By 1988, he had assumed the position of Supervisor of Internal Auditing in the Internal Auditing Office ("IAO") after working his way up through the ranks. As Supervisor of Internal Auditing,

---

[1] Defendants are being sued in both their official and personal capacities.




Civil No. 98-1011 (HL) 2

Lugo was responsible for among other things the supervision of a group of internal auditors.[2]

In 1983, Arthur Andersen & Co. conducted an external audit of the Internal Audit Office.[3] The audit revealed several problems including a lack of leadership in the IAO and signaled the need for restructuring the office. No restructuring took place at that time. In 1993, Executive Director Cordero decided to reorganize several offices including the Internal Audit Office.[4] To achieve that end more effectively, Cordero had an administrative consultant, Ramon Perez Auli ("Perez"), conduct a second study of the Internal Audit Office.[5] The study revealed several of the same problems as the previous audit and also recommended a restructuring of the office.[6]

In February, 1994, Cordero issued a reorganization plan for the Internal Audit Office following the recommendations of the Perez study.[7] This plan was approved by the governing board of PREPA on February 15, 1994.[8] One of the recommendations approved called for the elimination of the General Supervisor position in the office in order to

---

[2] Dkt. #28, Exh.15.

[3] Dkt. #20, Exh. 4.

[4] Dkt. #28, Exh. 10.

[5] Dkt. #28, Exh. 11.

[6] Dkt. #28, Exh. 11.

[7] Dkt. #28, Exh. 12.

[8] Dkt. #28, Exh. 13c.

Civil No. 98-1011 (HL)                                3

promote efficiency.[9] Lugo and two other supervisors held this position. Although the reorganization was approved in 1994, it did not take full effect until May, 1997. In the interim, the Internal Audit Office was restructured, and Lugo's position was reclassified to Supervisor of Operational Auditing.[10] Neither his salary, job responsibilities, nor his classification level were affected at that time.[11]

In May, 1997, the three general supervisors positions were eliminated pursuant to the reorganization plan, and Lugo was transferred to the finance directorate to assume the position of Supervisor of the General Accounting Section.[12] As a result of the transfer, his salary increased, his responsibilities remained essentially the same, but he was demoted in classification level (from an MV-III level 5 classification to a MV-II level 7 classification).[13] As for the other two supervisors, one, Edgar Rodriguez, was also transferred to assume a supervisory position in the finance directorate, and the other, Heriberto Ocasio Burgos ("Ocasio-Burgos"), remained in the Internal Auditing Office as an internal auditor.[14] Twenty-two other employees of diverse affiliations in the office were transferred to different directorates throughout the company.[15]

Lugo is a member of the Popular Democratic Party ("PDP"), and he alleges that his

---

[9] Under the final reorganization of the IAO, the Administrator of the IAO would be left directly responsible for overseeing the internal auditors. Dkt. #28, Exh.13c.

[10] Dkt. #28, Exh. 14.

[11] Dkt. #28, Exh. 14.

[12] Dkt. #28, Exh.16; Dkt. #20, Exh. 17, 18.

[13] Dkt. #20, Exh. 17, 18; Dkt. #28, Exh. 19.

[14] Dkt. #22, Exh.11; Dkt. #28, Exh.29, pg. 94.

[15] Dkt. #28, Exh. 29, pg. 79.

Civil No. 98-1011 (HL)                              4

political affiliation was well known.[16] In 1992, a shift in political power occurred when the New Progressive Party ("NPP") candidate, Pedro Rossello, was elected governor of Puerto Rico. Lugo claims that since that time, a discriminatory animus has pervaded against PDP members at PREPA.[17] Specifically, Lugo alleges that the entire reorganization plan– from the audit and study to the final reorganization and restructuring– constituted nothing more than a scheme to harass and ultimately remove him from the Internal Auditing Office because of his PDP affiliation.[18]

In December, 1996, Lugo filed a written complaint of employment harassment with PREPA's equal opportunity office.[19] He also sent a letter directly to Cordero requesting Cordero's direct intervention in helping to resolve the harassment.[20] However, in neither his complaint nor his letter did Lugo make any specific allegation of political discrimination. The equal employment office notified Lugo that his complaint was of an administrative nature and not related to employment discrimination under either federal or local law, and as such, effectively dismissed his complaint.[21]

Lugo bases his claims on several allegations. First, he claims that the only two employees demoted as a result of the reorganization were himself and Rodriguez because of their PDP affiliation. Second, that several NPP members were hired to IAO in late 1995 and early 1996 including Ocasio-Burgos despite the fact that the office was supposedly

---

[16] Dkt. #28, Exh. 29, pgs. 11-12.

[17] Complaint, pg. 6. Lugo claims there was talk of removing "red spots" from PREPA.

[18] Complaint, pg. 7.

[19] Dkt. #28, Exh. 22.

[20] Dkt. #28, Exh. 23.

[21] Dkt. #28, Exh. 24.

Civil No. 98-1011 (HL)                                    5

streamlining its operations. Third, Lugo alleges that after Administrator Cuello had taken over the IAO in 1995, she began to build up an adverse personnel record presenting Lugo as negligent, inept, and as an inadequate employee in order to justify his removal from the office.[22] Finally, Lugo avers that the fact that Ocasio-Burgos, an alleged PNP member, was allowed to remain in the IAO after the reorganization evidences the discriminatory targeting of PDP members for removal. Lugo admits that Ocasio-Burgos was initially demoted to internal auditor. However, Lugo basis his claims on the fact that Ocasio-Burgos' demotion was short-lived, and shortly after the reorganization, he was appointed to a newly created supervisory position in the IAO, that of Supervisor of Informational Systems responsible for computer systems auditing.[23]

## DISCUSSION

### I. Summary Judgment Standard

The standard for summary judgment is straightforward and well-established. The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically,

---

[22] Complaint, pg. 7.

[23] Dkt. #22, Exh. 13; Dkt. #28, Exh. 28, pg. 31-33.

Civil No. 98-1011 (HL)                                6

"a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 n. 22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R. Civ. P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court does at this point express its befuddlement at plaintiffs' complete failure to supply the Court with English translations for the exhibits accompanying their opposition to the defendant's motion for summary judgment. Plaintiffs' counsel should be well aware of Local Rule 108.1 requiring that any document filed with this Court in a language other than English be accompanied by a certified translation. The Court had no duty to review those exhibits submitted without a translation. *Rivera v. Hospital Interamericano de Medicina Avanza*, 125 F.Supp.2d 11, 14 (D.P.R. 2000) (declining to consider a deposition excerpt not accompanied by a certified translation); *see also Ramos-Baez v. Bossolo-Lopez*, 240 F.3d 92, 93-94 (1st Cir. 2001) (the circuit court will not consider untranslated documents pursuant to 1st Cir. R. 30.7). The Court, however, out of its benevolence did review those documents.

II. Political Discrimination:

Plaintiff avers that he was discriminated against because of his political affiliation. A claim under section 1983 has two essential elements: 1) the conduct complained of must have been committed under color of state law, and 2) the conduct must have worked a

Civil No. 98-1011 (HL)                    7

denial of rights that are protected by the Constitution or laws of the United States. *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995). Regarding the first element, the parties do not dispute that Defendants acted under color of state law. The second element has two aspects: (i) there must have been a deprivation of federal rights and (ii) there must have been a causal connection between the conduct complained of and the deprivation of rights. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985). Lugo bases his claims on the First Amendment.[24]

The First Amendment protects nonpolicymaking employees from discrimination based on their political beliefs or affiliation. *Branti v. Finkel*, 445 U.S. 507 (1980); *Larou v. Ridlon*, 98 F.3d 659, 661(1st Cir. 1996). In political discrimination cases, nonpolicymaking employees have the threshold burden to produce sufficient direct evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action. *Rodriguez-Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir. 1998). The Supreme Court has recognized that certain deprivations less harsh than dismissal based solely on political affiliation infringe First Amendment rights. *Rutan v. Republican Party of Il.*, 497 U.S. 62, 75 (1990). Once a plaintiff has met this threshold, the burden shifts to the employer to to articulate a nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken without regard to the plaintiff's political affiliation. *Larou*, 98 F.3d at 661; *Rodriguez-Rios*, 139 F.3d at 24; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

---

[24] Plaintiff has also alleged violations of the Fifth and Fourteenth Amendments. However, he has done so in a vague and cryptic manner. The Court need not address issues raised in a perfunctory manner, not accompanied by developed argumentation. *U.S. v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir. 1997). Moreover, in their motions, the parties treat this case solely as a First Amendment case. The Court will follow the parties lead and do likewise.

Civil No. 98-1011 (HL)                                8

For a plaintiff to avert summary judgment in such a case, he would have to point to evidence in the record, that if credited, would permit the rational fact finder to conclude that the challenged adverse action occurred and stemmed from a politically based discriminatory animus. *Rivera-Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir. 1994). Without more, a nonmoving plaintiff's unsupported and speculative allegations regarding discrimination would not be sufficient. *Id.* However, the First Circuit has recognized that circumstantial evidence alone can support a finding of political discrimination. *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 69 (1st Cir. 1993). The operative question is "does the circumstantial evidence, taken as a whole, give rise to a plausible inference of discriminatory animus which, ultimately possesses enough convictive force to persuade a rational fact finder that the defendants' conduct was politically motivated?" *Acevedo Garcia v. Vera- Monroig*, 30 F Supp.2d 141, 153 (D.P.R 1988). In this case, Lugo has failed to meet his initial burden of establishing a prima facie case by failing to provide any evidence, either direct or circumstantial, of any discriminatory animus on the part of the defendants.

The Court begins its analysis by examining Lugo's claim that his PDP affiliation was widely known within PREPA. Lugo's only support for this assertion is his deposition testimony that after 22 years at PREPA everyone knew everyone else's affiliation.[25] This conclusory allegation cannot be considered evidence as it lacks any basis in personal knowledge. *See cf Vargas v. Puerto Rican-American Ins. Co.*, 52 F.Supp.2d 305, 311 (D.P.R. 1999) (facts admissible into evidence must be based on personal knowledge). From the record, it is clear that Lugo was not a prominent member of the PDP. His role was more that of a quiescent member whose affiliation was limited to helping during campaigns, working at voting places, and selling tickets. He never held a significant or prominent position within the party, served as a voting place officer, or sold tickets at

---

[25] Dkt. #28, Exh. 29, pg. 12.

Civil No. 98-1011 (HL)                              9

PREPA.[26] As a matter of fact, in his deposition, Lugo stated that he maintained his integrity at PREPA by keeping his work and politics separate.[27] These facts fall short of establishing Lugo's claim that his affiliation was well known.

Nevertheless, the true inquiry in such a case revolves not so much on whether the plaintiff's political affiliation was generally known, but whether it was actually known by the defendants. Specifically, a plaintiff must show that a "causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics." *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 58 (1st Cir. 1990); *Larou*, 98 F.3d at 662. As a matter of common sense, this causal link can only be established if defendants were actually aware of plaintiff's affiliation and acted based on that knowledge.

On this question, the record is sparse. Lugo adduces no evidence suggesting that the defendants were aware of his affiliation prior to or at the time the decision to reorganize was made. As a matter of fact, Lugo admits that Defendants Cordero, Cuello, Verge, and Mendes may not have known of his affiliation.[28] If this is indeed the case, defendants could not have had a political motivation to, as Lugo alleges, develop a scheme to remove him from the IAO because they did not know he was a member of the PDP. As for Defendants Ocasio and Llompart, who Lugo claims did know, there is no evidence that either of them had any role or part in deciding the reorganization that resulted in Lugo's

---

[26] Dkt. #28, Exh. 29, pg. 12, 13.

[27] Dkt. #28, Exh. 29, pg. 101. As proof of this clam, Lugo offered the fact that Ocasio-Burgos admitted not knowing Lugo's political affiliation until he read about it in the newspapers even though that even though both worked as supervisors in the same office. Id.

[28] Dkt. #28, Exh. 29, pgs. 105-107.

demotion in classification level.[29]

As evidence of a discriminatory animus against PDP members, Lugo points to the fact that several NPP members were hired in the IAO in late 1995 and early 1996.[30] Lugo also highlights the fact that one of those new employees, Ocasio-Burgos, was the only supervisor who remained in the IAO as an internal auditor after the reorganization. More troubling is the fact that Ocasio-Burgos was promoted to a newly created supervisory position in the IAO dealing with computer audits. This might engender some suspicion. However, upon review of the record, the Court finds no evidence that Ocasio-Burgos is a member of the NPP. To the contrary, the only evidence relating to Ocasio-Burgos' affiliation is his deposition where he stated that he does not have a political affiliation.[31] Moreover, it appears from Cordero's recommendations to the Governing Board that computerized systems auditing was necessary to improve the office's overall efficiency.[32] The creation of a new position in this area appears to be consistent with the goal of the reorganization. The Court notes that Lugo lacked the computer knowledge to supervise this area.[33]

Lugo's evidence of discriminatory animus also includes a February 29, 1996, report written by Cuello for Mervyl Allende, the General Administrator for the Office of the

---

[29] Dkt. #28, Exh. 29, pgs. 105-107.

[30] Dkt. #22, Exh. 9.

[31] Dkt. #28, Exh. 28, pg. 39.

[32] Dkt. #28, Exh. 12, pg. 3.

[33] Dkt. #28, Exh. 29, pg. 85. Lugo did take at least two seminars on the operation of Windows 95 and Windows 3.11. Dkt. #28, Exh. 20, 20a. There is no evidence suggesting Lugo was qualified to oversee computer audits.

Executive, apparently in response to a letter written by Lugo, which is not in evidence.[34] The overall tone of the report does indeed reflect a negative attitude toward Lugo, not as a PDP member, but as an employee. Cuello describes Lugo's inefficiency as a supervisor citing the fact that it took Lugo twice as long to review audit reports than the time it took the field auditors to compile them.[35] Furthermore she cites several examples evidencing his uncooperative and negative attitude in the office. Lugo's highlights Cuello's statement, "in my opinion, this office should not be at the mercy of anyone whose loyalty depends on whether a person is one of us or not," as proof of Cuello's problem with his political affiliation.[36] The implication Cuello makes is that Lugo is the type of person who is only loyal to those of his same affiliation. This opinion, however, does not reflect a general disdain for PDP members, but for Lugo's uncooperative attitude, and as such is not sufficient to prove a discriminatory animus. Moreover, Lugo adduces no evidence linking Cuello to the decision process that ultimately led to his demotion.

In the end, Lugo's putative allegations do not rise to a level where a reasonable factfinder could plausibly find that the reorganization was designed solely to remove him from the IAO, or that his political affiliation was a substantial or motivating factor for the decision to reorganize. There is no evidence that the reorganization was politically motivated to remove PDP members. On the contrary, Lugo himself admits that the twenty-two employees transferred out of the IAO were of diverse political affiliations.[37] More striking is the fact that Lugo admitted that he did not know if the reorganization was

---

[34] Dkt. #22, Exh. 8. This report is in Spanish and no translation was provided. Nevertheless, the Court examined its content.

[35] Dkt. #22, Exh. 8, pg. 2.

[36] Dkt. #22, Exh. 8, pg. 14. This translation was provided by the Court.

[37] Dkt. #28, Exh. 29, pg. 79.

Civil No. 98-1011 (HL)                        12

implemented to remove him from the IAO.[38]  Moreover, in none of his harassment complaints to the equal opportunity office did Lugo allege political discrimination.  The Court further notes that Lugo was transferred to a similar supervisory position, with similar responsibilities, and a higher salary.  While he may have been indeed received a lower classification level, there is no evidence that his demotion and transfer were a result of a politically motivated "housecleaning" especially in light of the fact that those defendants in charge of the reorganization may not have even known of Lugo's PDP ties.  On this evidence, Lugo has failed to establish even a tenuous causal link between the challenged employment action and his political views.

Yet, assuming, *arguendo*, that Lugo had established his prima facie case of political discrimination, defendants have met their burden of proving by a preponderance of the evidence that their challenged employment actions were prompted by legitimate, nondiscriminatory reason. *Rodriguez-Rios*, 138 F.3d at 25.  Defendants claim that Lugo's transfer and demotion were a result of a bona fide reorganization at PREPA.  The Court finds there to be sufficient evidence supporting PREPA's claim that a reorganization was needed in the IAO. It is clear that the office was finally reorganized and restructured pursuant to the recommendations of an audit and a study that revealed the lack of efficiency in the office.

Furthermore, this case is inapposite to the situation in *Rodriguez -Rios*, another case challenging a PREPA reorganization.  In that case, the First Circuit found that a PREPA reorganization of the Human Resources Department was conducted as a pretext for discrimination and not for a bona fide, nondiscriminatory purpose  because it had never been reviewed or approved by the Governing Board of PREPA. *Rodriguez -Rios*, 138 F.3d at 25.  This, however, is not the case here.  The Governing Board approved the reorganization plan based on the recommendations made by Cordero on February 15,

---

[38] Dkt. #28, Exh. 29, pg. 76.

1994.[39] The Court notes that after the reorganization, Lugo's position was no longer existent, and therefore it was not possible for a NPP member to replace him. Furthermore, the reorganization resulted in the transfers of NPP members as well as PDP members alike. There is no evidence that this reorganization was implemented as a discriminatory tool to remove PDP members from the IAO.

WHEREFORE, the Court hereby GRANTS defendants' motion for summary judgment as to all claims against all defendants. (Dkt. #20).

Lastly, Lugo has also brought several claims under local law. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.*; *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *Soto v. Carrasquillo*, 878 F.Supp. 324, 332 (D.P.R. 1995), *aff'd sub nom. Soto v. Flores*, 103 F.3d 1056 (1st Cir. 1997). Because the Court has dismissed Lugo's claims under the Federal Constitution, the Court hereby dismisses without prejudice his Puerto Rico law claims. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 8, 2001.

HECTOR M. LAFFITTE
Chief U.S. District Judge

---

[39] Dkt. #28, Exh. 13c.